COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP251**

STATE OF WISCONSIN

Cir. Ct. No. 2013CF3214

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MATTHEW RAY TAYLOR,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Dugan, Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Matthew Ray Taylor appeals the circuit court order denying his second motion for postconviction relief.   Taylor argues that he is entitled to a new trial, or at minimum, an evidentiary hearing, based on newly-discovered evidence from four people who contend he could not have committed the crime for which he was convicted.   In the alternative, Taylor argues that trial counsel provided ineffective assistance of counsel.   We reject Taylor's arguments and affirm the circuit court.

**BACKGROUND**

¶2    This is Taylor's second appeal for postconviction relief, pursuant to WIS. STAT. § 974.06 (2017-18).[1]  In December 2013, Taylor was convicted at trial of first-degree reckless homicide and first-degree reckless injury, both by use of a dangerous weapon, and being a felon in possession of a firearm.   The underlying criminal complaint alleged that Taylor approached a vehicle on North 15th Street in Milwaukee containing three people in the early morning hours of July 11, 2013, and he attempted to conduct a drug transaction.   However, when problems with the drug transaction developed, Taylor shot into the car, killing one person and injuring a second.   At least one of the occupants of the car fired back.

¶3    At about the same time, the police responded to a request for help at a house on North 15th Street, about a block south of the shooting.   The police found Taylor inside the house with a gunshot wound to his leg; he was subsequently arrested.   The police followed a blood trail that led from the site of the shooting to a garbage container, where the police found the firearm used to

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

shoot into the car, and then the blood trail led to the house where Taylor was found. Inside the house where Taylor was found, the police recovered a black hoodie[2] with fresh blood on it.

¶4 The two eyewitnesses to the shooting—the injured victim and a person in the backseat of the car—identified Taylor in a police photo array as the person who shot into the car. At trial, they each testified that Taylor was the shooter and the shooter was wearing the black hoodie during the shooting. Taylor was convicted of all counts and sentenced to a global bifurcated sentence of thirty years of initial confinement and twenty-five years of extended supervision.[3]

¶5 The circuit court denied, without a hearing, Taylor's first postconviction motion based on newly-discovered evidence. Taylor appealed to this court, which affirmed the circuit court. *See **State v. Taylor** (**Taylor I**)*, No. 2016AP682-CR, unpublished slip op. (WI App June 27, 2017).

¶6 Taylor now files a second postconviction motion, arguing different newly-discovered evidence undermines the verdict, compelling either an evidentiary hearing or a new trial. In the alternative, Taylor argues that trial counsel was ineffective, which entitles him to a **Machner**[4] hearing. Taylor

---

[2] Various accounts refer to the sweatshirt entered into evidence at trial as the black hoodie, the black hooded sweatshirt, the black sweatshirt with writing on it, the black sweatshirt with the word "Grumpy" on it, and the black sweatshirt with a Grumpy character logo on it. Each affidavit Taylor presents references a photograph of the same sweatshirt and it matches the trial description. We refer to it as the black hoodie.

[3] We recite the facts relevant to this appeal, but additional facts are found in our previous decision. *See **State v. Taylor** (**Taylor I**)*, No. 2016AP682-CR, unpublished slip op. ¶¶4-12 (WI App June 27, 2017).

[4] **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

proffers affidavits from four individuals as new evidence. We summarize the information offered as newly-discovered evidence below.

¶7 The first affiant, Ericka Johnson, stated that she was awakened when she heard Taylor calling for help and she found Taylor bleeding from a gunshot to his leg in the living room. She grabbed clothing out of a closet in the back of the house to stop the bleeding; the clothing she grabbed included the black hoodie. She recognized the black hoodie as one that had been in the house for over a year at the time of the shooting; she never saw Taylor wear it. She was confident that Taylor was wearing all white on the night of the shooting. Taylor's trial counsel did not contact her at any time before his conviction and sentencing; further, she never told Taylor or anyone else that she was willing to testify on his behalf.

¶8 The second affiant, Lee Bellamy, is Taylor's cousin. He claimed he spent the day before the shooting with Taylor at their grandmother's house until Taylor left to visit friends; further, Taylor was wearing all white and he was not wearing the black hoodie. Bellamy knew that Taylor was afraid of guns and did not have a gun on the day of the shooting. Taylor's trial counsel did not contact him at any time before Taylor's conviction and sentencing; further, Bellamy never told Taylor or anyone else that he was willing to testify on his behalf.

¶9 The third affiant, Darrick Travis, claimed that he was with Taylor on the night of the shooting and that Taylor was wearing all white, not the black hoodie. Travis claimed that after Taylor was taken away by ambulance, Terry Singleton said he was the shooter and that he believed his prints would be found on the gun used in the shooting. Travis stated that Singleton also told him that he thought he might get away with the shooting, after he was not identified in a police lineup and released. Approximately a year later, Travis was incarcerated with

Singleton and he claimed that Singleton said he felt badly that Taylor had been convicted even though he was innocent, but Singleton had no plans to turn himself in and risk additional prison time. Travis stated that he had not informed authorities about these statements until now out of concern for his own safety, but he wanted to tell the truth. Taylor's trial counsel did not contact Travis prior to Taylor's conviction; however, he was contacted by Taylor's appellate counsel and was asked to testify in any further proceedings.

¶10     The fourth affiant, Terry Singleton, stated that he witnessed the shooting from a close distance and when the shots were fired, he could see Taylor at a distance walking down the street, not pointing or holding a gun. Additionally, he recalled Taylor wearing all white, not the black hoodie. Taylor's trial counsel did not contact Singleton prior to Taylor's conviction and sentencing and Singleton did not tell Taylor he was willing to testify on his behalf.[5] Singleton stated that he was not coerced to make this affidavit and he was aware that he could consult with an attorney and that his testimony may subject him to criminal prosecution and punishment.

¶11     The circuit court denied Taylor's second postconviction motion without a hearing. The circuit court ruled that none of the affidavits constituted newly-discovered evidence under the law. It ruled that Johnson, Bellamy, and Travis's affidavits were inadequate to show that the evidence was not known to Taylor at the time of trial, and it was not reasonably probable that the new

---

[5] We note that Singleton was named on the State's witness list for Taylor's trial; Taylor's witness list included "Any person on the State's Witness List." In our previous decision, we concluded that Taylor's defense was not prejudiced by counsel's failure to call Singleton as a witness. *Taylor I*, ¶34.

evidence would undermine confidence in the outcome of the trial. The circuit court found Singleton's account "utterly insufficient" to satisfy the newly-discovered evidence standard. It discounted the value of Singleton's testimony, quoting from our previous decision denying relief to Taylor.

¶12    This appeal follows. Additional facts will be included as necessary.

## STANDARD OF REVIEW

¶13    A circuit court may deny a postconviction motion without a hearing where the motion on its face fails to allege sufficient facts, only makes conclusory allegations, or the record conclusively demonstrates that the defendant is not entitled to relief. *State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89 (citations omitted). "Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant" to an evidentiary hearing is a mixed question of fact and law. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If the motion alleges facts that would entitle the defendant to relief, "the circuit court has no discretion and must hold an evidentiary hearing." *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). "Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review *de novo*." *Id.* (emphasis added).

¶14    The postconviction motion must specifically allege within its four corners material facts answering the questions who, what, when, where, why, and how the movant would successfully prove at an evidentiary hearing that he or she is entitled to a new trial: "the five 'w's' and one 'h'" test. *Allen*, 274 Wis. 2d 568, ¶23; *see also State v. Love*, 2005 WI 116, ¶27, 284 Wis. 2d 111, 700 N.W.2d 62. We review the circuit court's decision to deny an evidentiary hearing under the erroneous exercise of discretion standard. *See Allen*, 274 Wis. 2d 568, ¶9. "A

circuit court erroneously exercises its discretion when it applies an incorrect legal standard to newly-discovered evidence." ***State v. McAlister***, 2018 WI 34, ¶26, 380 Wis. 2d 684, 911 N.W.2d 77, *reconsideration denied*, 2018 WI 90, 383 Wis. 2d 146, 918 N.W.2d 77, *and cert. denied*, 139 S. Ct. 824 (2019) (citation omitted).

## DISCUSSION

¶15 Taylor argues that the four affidavits he presents in his second postconviction motion are newly-discovered evidence that compel, at minimum, an evidentiary hearing, or directly, a new trial. He asserts that the circuit court erroneously exercised its discretion when it denied his motion. In the alternative, he argues that if this court considers this evidence to have been available at his trial, then his trial counsel provided ineffective assistance of counsel by not investigating and presenting this evidence, and the case should be remanded for a *Machner* hearing on that claim.

**I.     The circuit court did not erroneously exercise its discretion when it denied Taylor's second postconviction motion on the basis of newly-discovered evidence.**

¶16 Taylor argues that the State's case rested so strongly on the identification of the shooter as the person in the black hoodie that the outcome of the trial is undermined by his proffered affidavits from four people who claim, among other things, that Taylor was not wearing the black hoodie that night. Additionally, he argues that Travis states in his affidavit that Singleton confessed on multiple occasions that he committed the shooting and that Taylor did not, which, if accepted as true, would undermine the verdict. We conclude that Taylor

has failed to prove that he is entitled to an evidentiary hearing or a new trial on his newly-discovered evidence postconviction motion.

¶17 "In order to set aside a judgment of conviction based on newly-discovered evidence, the newly-discovered evidence must be sufficient to establish that a defendant's conviction was a 'manifest injustice.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted). Mirroring the statutory requirements warranting a new trial on the basis of newly-discovered evidence in WIS. STAT. § 805.15(3), a postconviction motion must establish by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Love*, 284 Wis. 2d 111, ¶43 (citation omitted).

¶18 If these factors are proven, the trial court must then determine "whether a reasonable probability exists that a different result would be reached in a trial." *Id.*, ¶44 (citation omitted). "A reasonable probability of a different outcome exists if there is a reasonable probability that a jury, looking at both the old evidence and the new evidence, would have a reasonable doubt as to the defendant's guilt." *State v. Vollbrecht*, 2012 WI App 90, ¶18, 344 Wis. 2d 69, 820 N.W.2d 443. However, the reasonable probability determination "does not have to be established by clear and convincing evidence, as it contains its own burden of proof." *Love*, 284 Wis. 2d 111, ¶44. We review the circuit court's decision to grant or deny a motion for a new trial based on newly-discovered evidence under the erroneous exercise of discretion standard. *See Plude*, 310 Wis. 2d 28, ¶31.

¶19     Each affiant attests that Taylor was not wearing the black hoodie: Johnson claims the black hoodie was in the house during the shooting; Bellamy and Travis saw Taylor wearing all white and not the black hoodie on the day and evening of the shooting; and Singleton saw Taylor wearing all white and not the black hoodie during the shooting.   Additionally, Travis alleges that Singleton confessed to him on three occasions that Singleton himself committed the shooting.   Singleton does not confess in his affidavit, but he does state that from his vantage point during the shooting, Taylor was not pointing or firing a gun. Taylor's appeal attacks the credibility of the eyewitnesses and their identification of him as the shooter; however, he relies on arguments previously raised at trial and in his first postconviction motion that did not convince the jury or the circuit court.[6]

¶20     Taylor argues that the evidence from Johnson, Bellamy, and parts of the Travis affidavit is new because the affiants did not come forward until four years after the trial.   We disagree.   "[T]he test to determine if evidence is newly discovered is not what counsel knows or is aware of, but what the client … is or should be aware of."   *State v. Williams*, 2001 WI App 155, ¶21, 246 Wis. 2d 722,

---

[6] *Cf.* *State v. Edmunds*, 2008 WI App 33, ¶11, 308 Wis. 2d 374, 746 N.W.2d 590 (newly discovered evidence supported a new trial because "[a]lthough the basic arguments are parallel, the form and nature of the evidence supporting the arguments are dramatically different.").

631 N.W.2d 623.[7]  In a WIS. STAT. § 805.15(3) analysis, the inquiry into whether evidence was discovered after the trial is often paired with the inquiry into the defendant's diligence.  It is the defendant's burden to show that the evidence could only be discovered after trial.  *See Curran v. A.H. Stange Co.*, 98 Wis. 598, 74 N.W. 377, 381 (1898) (denying a new trial because "[t]here is nothing to show that the fact was learned after the trial of the case closed").

¶21    We note that Taylor submits no affidavit of his own, attesting to his diligence in seeking evidence to support that he was not wearing the black hoodie.  Taylor asks us to consider Johnson, Bellamy, and Travis's affidavits to constitute newly-discovered evidence merely because the affiants did not reach out to Taylor.  That is not the standard.  "General averments as to diligence are not sufficient.  The facts should be set out so as to negative fault on the part of the movant."  *Venci v. Eannelli*, 269 Wis. 192, 215, 68 N.W.2d 791 (1955).  Taylor

---

[7] Taylor objects to the use of the test from *State v. Williams*, 2001 WI App 155, 246 Wis. 2d 722, 631 N.W.2d 623, distinguishing that *Williams* was focused on expert witness testimony in a civil commitment case.  He does not explain why that would be inapplicable to the law on newly-discovered evidence for Taylor's postconviction motion, which is "considered civil in nature" under WIS. STAT. § 974.06(6).  Further, "[t]he rules governing the granting of a new trial on the ground of newly discovered evidence in a criminal case are the same rules which govern the granting of a new trial for newly discovered evidence in a civil case."  *Lock v. State*, 31 Wis. 2d 110, 116-17, 142 N.W.2d 183 (1966).  Our review of the test referenced in *Williams* appears first in *Bear v. Kenosha County*, 22 Wis. 2d 92, 99, 125 N.W.2d 375 (1963), a condemnation case.  It has been applied in multiple areas of law including in criminal cases, *State v. Albright*, 98 Wis. 2d 663, 674, 298 N.W.2d 196 (Ct. App. 1980), and in a personal injury settlement, *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 744, 433 N.W.2d 654 (Ct. App. 1988), *aff'd as modified and remanded*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990).

Taylor also objects to our previous decision's reliance on *State v. Jackson*, 188 Wis. 2d 187, 525 N.W.2d 739 (Ct. App. 1994), arguing that *Jackson* posed a situation of a codefendant whose testimony was unavailable due to Fifth Amendment right concerns, whereas, the proposed testimony from Johnson, Bellamy and Travis do not raise the same concerns about unavailability of the witnesses.  First, we note that our prior decision analyzed Singleton as Taylor's potential co-conspirator, making the evidentiary burden in *Jackson* appropriate.  Second, we are not reviewing our previous decision.

had a responsibility to pursue evidence in his defense. He only had to consider his own contacts on the day of the shooting to find the evidence proffered by Bellamy and Travis, namely that each saw him wearing white. Therefore, we reject his attempt to shift blame to trial counsel on the question of diligence.

¶22 The circuit court ruled that the evidence proffered in the Johnson, Bellamy, and parts of the Travis affidavits was insufficient to satisfy the first prong of the newly-discovered evidence standard because it encompassed information that was clearly known to Taylor prior to trial. We agree. Taylor was present for each of the described interactions. Because newly-discovered evidence must satisfy all factors under the law, having the evidence not be discovered after trial and be known to Taylor prior to trial is enough to conclude that Taylor's motion for a new trial on these grounds is properly denied.

¶23 We interpret Taylor's argument to be that these four witnesses, if allowed to testify, could cast reasonable doubt on the State's evidence that Taylor committed the shooting while wearing the black hoodie. As this was Taylor's defense at trial, we also conclude that these assertions about Taylor's clothing choices are cumulative, and therefore, these affidavits do not constitute newly-discovered evidence to warrant a new trial or an evidentiary hearing. "Where the credibility of a prosecution witness was tested at trial, evidence that again attacks the credibility of that witness is cumulative." *McAlister*, 380 Wis. 2d 684, ¶39 (citing *United States v. Champion*, 813 F.2d 1154, 1171 (11th Cir. 1987)). As noted in *Taylor I*, the State called two eyewitnesses to the shooting—one who was injured in the shooting and the other who was in the car—and they each testified that Taylor committed the shooting and Taylor was wearing the black hoodie. The defense thoroughly cross-examined the eyewitnesses. The jury heard their testimony identifying Taylor and the defense's attempts to cast doubt on this

11

testimony; nevertheless, the jury convicted Taylor. We conclude that the testimony of these four potential witnesses would be cumulative.

¶24 Although Taylor contends that the newly-discovered evidence reaches the heart of the State's case and its reliance on the black hoodie, we are unconvinced. The circuit court weighed having Bellamy and Travis testify that Taylor was wearing all white earlier in the evening against the eyewitness testimony that identified Taylor wearing the black hoodie during the shooting, and it found no reasonable probability that the jury would have reasonable doubt about Taylor's guilt. *See State v. Avery*, 2013 WI 13, ¶¶34-35, 345 Wis. 2d 407, 826 N.W.2d 60. The circuit court considered whether Johnson's claim that the black hoodie was inside the house during the shooting could impeach the eyewitness testimony that Taylor was wearing the hoodie during the shooting, and again, found no reasonable probability of a different outcome. The circuit court examined the facts in the record, applied the proper legal standards, and employed a rational, logical process to exercise its discretion. *See State v. Shanks*, 2002 WI App 93, ¶6, 253 Wis. 2d 600, 644 N.W.2d 275. We conclude that claims that Taylor was not wearing the black hoodie did not compel an evidentiary hearing or a new trial for Taylor; therefore, the circuit court appropriately exercised its discretion to deny Taylor's motion.

¶25 Turning to the second claim that Singleton confessed to Travis, we conclude that Singleton's alleged statements do not constitute newly-discovered evidence that compel a new trial or an evidentiary hearing. In his affidavit, Travis states:

> After [Taylor] left in an ambulance, I ran into Terry Singleton nearby on 15th Street…. We discussed the shooting. Terry told me that he was the shooter and he believed his prints would be found on the gun.

….

I spoke with Singleton again shortly after the police released him from custody. He told me he thought he might get away with the shooting because the police had placed him in a lineup and he had not been identified.

….

Singleton told me that he felt bad because he knew Matthew Taylor was innocent, but that he had no plans to turn himself in because he just "couldn't do that time." I understood "that time" meant a prison sentence.

¶26 In *Taylor I*, we concluded that Singleton's alleged confessions to two affiants did not constitute newly-discovered evidence.[8] The first affidavit stated that Taylor was accompanied by Singleton when he arrived at the house after being shot in the leg, and Singleton said he had just shot someone.[9] In *Taylor I*, this court said that "[t]he trial court found this [first] affidavit was insufficient to satisfy the newly-discovered evidence standard. We agree." These facts were known to Taylor prior to trial, and this evidence would be properly considered unavailable testimony under *State v. Jackson*, 188 Wis. 2d 187, 201, 525 N.W.2d 739 (Ct. App. 1994). The second affidavit, from an individual incarcerated with Taylor and Singleton at different times, stated that Singleton told the affiant that he has gotten away with killing someone in a shooting and someone else was being prosecuted for the crime. The circuit court ruled that

---

[8] In *Taylor I*, we noted that these affidavits were filed under seal due to concern for the safety of the individuals from whom the testimony was elicited.

[9] In the circuit court decision underlying this appeal, the circuit court noted that the first affidavit in the first postconviction motion was signed by Shatara Mobley. In the second postconviction motion proceeding, Johnson's affidavit states that Mobley is her sister and that Mobley was dating Singleton on the date of the shooting.

13

affidavit constituted inadmissible hearsay. We agreed that the affidavit was not admissible under WIS. STAT. §§ 908.02 or 904.01.

¶27 Here, the State argues that to the extent Taylor's claim that Singleton was the real perpetrator of the crime is the same claim he advanced in and lost in *Taylor I*, this court's prior decision constitutes the law of the case. "The law of the case doctrine is a longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." *State v. Stuart*, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82 (citations omitted). Taylor argues that in *Taylor I*, we only found the statements of the second affiant to be hearsay and that we determined the confession to the first affiant did not constitute newly-discovered evidence because it would have been known to Taylor prior to trial. Taylor argues that the law of the case would not apply to every allegation of confession and would specifically not apply to Singleton's alleged confessions to Travis.

¶28 However, in *Taylor I*, we stated that "in the unlikely event of Singleton confessing on the stand, it still would not have disproved Taylor's involvement in the crime, since both [witnesses] testified that two men had approached their vehicle for the drug transaction. Additionally, neither [witness] identified Singleton in a live lineup." *Id.*, No. 2016AP682-CR, ¶33. Further, we stated that we agreed with the circuit court's finding that "there is not a reasonable probability that Singleton's testimony would have altered the outcome of the trial." *Id.*, ¶34. Our holding applies equally to Taylor's arguments in this appeal. Taylor does not explain how Travis's testimony that Singleton allegedly confessed to him would create doubt where this court concluded in *Taylor I* that, based on the evidence introduced at trial, that even if Singleton confessed on the witness

stand there would be not reasonable probability that his testimony would have altered the trial outcome.[10]  Therefore, we conclude that Taylor has failed to provide clear and convincing evidence of newly-discovered evidence using Travis's affidavit that would warrant a new trial or evidentiary hearing.

¶29     Next we consider Taylor's alternative argument that he is entitled to an evidentiary hearing on his newly-discovered evidence claim.  We conclude that the record conclusively demonstrates that Taylor is not entitled to relief.  We conclude neither ruling was an erroneous exercise of discretion because the circuit court "examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." **Bentley**, 201 Wis. 2d at 318.  We perceive a rational basis for the court's decision in conformity with our previous decision and the facts in the record.  *See* **Shanks**, 253 Wis. 2d 600, ¶6.  Therefore, the circuit court could exercise discretion to deny the second postconviction motion.  *See* **Sholar**, 381 Wis. 2d 560, ¶50.

**II.     The circuit court did not erroneously exercise its discretion to deny Taylor's second postconviction motion on his claim of ineffective assistance of counsel.**

¶30     Taylor argues that trial counsel was deficient for failing to investigate and present these four witnesses at trial.  The postconviction court ruled that Johnson, Bellamy, and Travis's evidence would have been known to Taylor before trial; therefore, it was his responsibility to relay information to

---

[10] Taylor argues that Singleton's alleged confessions to Travis were admissible under WIS. STAT. § 908.045(4).  We do not address this argument because the law of the case established in *Taylor I* disposes of this issue.  *See* **Barrows v. American Fam. Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

counsel and absent a showing that trial counsel did not pursue it, his trial counsel could not be deemed ineffective.

¶31 To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In our analysis, we "may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice" from counsel's performance. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶32 Whether there was a violation of a defendant's constitutional right to the effective assistance of counsel is a mixed question of law and fact. *See State v. Trawitzki*, 2001 WI 77, ¶19, 244 Wis. 2d 523, 628 N.W.2d 801. We will uphold the circuit court's findings of fact unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2); *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). The inquiry into whether a defendant received ineffective assistance of counsel—meaning counsel's performance was both deficient and prejudicial—is a question of law that we review independently without deference to the circuit court. *See State v. Hunt*, 2014 WI 102, ¶22, 360 Wis. 2d 576, 851 N.W.2d 434.

¶33 Taylor argues that if we conclude that he was not diligent in pursuing this evidence, then his trial counsel must be faulted for the negligent

16

presentation of the case.[11]  Our analysis did not hinge on a lack of diligence by Taylor, but rather that the evidence taken together was cumulative to the previous defense, it was not discovered after trial, it was not admissible, and none of it would have had a reasonable probability to change the outcome of the trial. Further, our analysis of trial counsel's performance is governed by the law of the case established in *Taylor I*.  *See Stuart*, 262 Wis. 2d 620, ¶23.

¶34    Here, we are bound by our previous decision that trial counsel was not deficient for failing to call witnesses, including Singleton and "a number of witnesses who were at the residence on 15th Street where he took refuge after being shot who would have testified that he was not wearing a black hooded sweatshirt."  *Taylor I*, No. 2016AP682-CR, ¶28.  We noted that "[a]dditionally, two of the witnesses that Taylor contends should have been called at trial told police that they had seen Taylor wearing that black hoodie in the past."  *Id.*, ¶29. Therefore, we concluded:

> Given the nature of the testimony that would have likely been elicited from these witnesses, and the fact that it may have inculpated Taylor instead of exculpating him, the trial court found that Taylor's trial counsel was not deficient for not calling any of these witnesses.  We agree.

*Id.*, ¶30.

¶35    This analysis applies equally to proffered testimony from Johnson, Bellamy, Travis, and Singleton, which all seek to undermine that Taylor was wearing the black hoodie on the night of the shooting.  None of these affidavits show that trial counsel was deficient in her presentation of Taylor's defense.

---

[11] We note that Taylor has not submitted an affidavit alleging that he told trial counsel about these witnesses, what they would have said, and that she failed to investigate them.

"Because we conclude that trial counsel's performance was not deficient, we need not address whether, in the context of ineffective assistance of counsel, there was prejudice" to Taylor, and we stop out inquiry here. *See State v. Breitzman*, 2017 WI 100, ¶ 44, 378 Wis. 2d 431, 904 N.W.2d 93.

¶36 Taylor further argues that trial counsel was ineffective for not calling Singleton as a witness at trial. In *Taylor I*, we addressed trial counsel's decision not to call Singleton, and we concluded:

> In contemplating what Singleton's testimony would have been if called, it likely would have been similar to his statement to police: that he was close to the scene at the time of the shooting; saw Taylor in the road, shot in the leg, with a gun next to him; and then assisted Taylor to the residence on 15th Street, throwing the gun in a dumpster along the way. It is extremely unlikely that Singleton would have confessed to committing the shooting himself.

> Furthermore, in the unlikely event of Singleton confessing on the stand, it still would not have disproved Taylor's involvement in the crime, since both [witnesses] testified that *two* men had approached their vehicle for the drug transaction. Additionally, neither [witnesses] identified Singleton in a live lineup.

> For these reasons, the trial court found that even if Taylor's trial counsel was deficient for not calling Singleton, Taylor still failed to prove he was prejudiced by this deficiency because there is not a reasonable probability that Singleton's testimony would have altered the outcome of the trial. *See Strickland*, 466 U.S. at 694. We agree with this finding as well, and therefore affirm the trial court's finding that Taylor's trial counsel was not ineffective for failing to call these witnesses.

*Id.*, No. 2016AP682-CR, ¶¶32-34.

¶37 Again, Singleton's new affidavit does not undermine our legal analysis from *Taylor I*. We conclude that Taylor has failed to provide evidence to

show that trial counsel performed deficiently; therefore, trial counsel did not provide ineffective assistance of counsel.

¶38     Accordingly, we affirm the circuit court's denial of Taylor's second postconviction motion, based on its ruling that the four new affidavits did not present newly-discovered evidence under the legal standard, its finding that Taylor's trial counsel was not ineffective for the same reasoning as we explained in *Taylor I*, and its conclusion that Taylor had not presented a viable claim for relief for purposes of obtaining either an evidentiary hearing or a new trial on his newly-discovered evidence claims or a *Machner* hearing on his ineffective assistance of counsel claim.

        *By the Court*.—Order affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.